Elaine VANNI

v.

Joseph VANNI.

No. 85–495.

Supreme Court of Rhode Island.

Jan. 26, 1988.

Sanford M. Kirshenbaum, Providence, for plaintiff.

Mortimer C. Newton, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter is before this court on appeal by Joseph Vanni (husband) from a decree entered in the Family Court granting the petition of Elaine Vanni (wife) for an absolute divorce on the grounds of irreconcilable differences. The husband appeals from the Family Court's assignment of marital property and contends that the trial justice erred in including assets acquired by the husband after the marriage was irretrievably broken. The husband also argues that the trial justice misconceived and overlooked material evidence and consequently miscalculated the marital assets. We affirm in part and reverse in part.

The parties were married in Rhode Island on November 19, 1960. Mr. Vanni moved out of the marital home in October 1980 and has not lived there since that time. On November 18, 1980, Mrs. Vanni filed a petition for divorce on the grounds of irreconcilable differences and extreme cruelty. A trial was held on May 15, 1985. The trial justice granted Mrs. Vanni's petition for absolute divorce on the grounds of irreconcilable differences and assigned to the wife all right, title, and interest in the marital domicile located in North Providence, Rhode Island.

At trial Mrs. Vanni testified that most of the marital relationship was strained due to money problems that resulted from her husband's lack of steady employment. She described disagreements with her husband that stemmed from his refusal to adopt children. Mr. Vanni was most likely sterile

as a result of radiation therapy he had for cancer during his childhood. He testified that he was reluctant to adopt children because of financial instability. Mrs. Vanni stated that she has been employed as an office secretary since 1969 and presently earned $14,000 per year. She stated that her husband had been a race-car driver but had broken his hip in 1971 in an accident and had been on crutches for three years. According to testimony, he had an artificial hip implanted and thereafter worked periodically at various low-paying jobs. In 1980 he accepted a job with Funds for Community Progress that paid $14,000 per year. However, Mr. Vanni did not begin working there until after he left the marital home in October 1980.

During the marriage the parties purchased a home in North Providence for $17,500. The purchase was made with a $10,000 loan provided by Mr. Vanni's mother, that was paid back with interest. The balance of $7,500 was a gift from Mr. Vanni's mother. The parties agree that the fair market value of the house is $40,000. Mrs. Vanni testified, and her husband agreed, that his contribution had been to pay the real estate taxes, insurance, and utilities. Mrs. Vanni paid for all food, clothing, and other expenses from her earnings. In 1982 Mr. Vanni contributed $600 for house painting and gave $500 to his wife for expenses.

Mr. Vanni testified that he left the marital home for the attentions of another woman in October 1980. He stated that the relationship lasted only a few days, after which he returned to his wife and attempted reconciliation. She refused his offer. Thereafter Mr. Vanni moved in with his mother, where he continues to reside.

Mr. Vanni testified that in 1978 he opened an IRA account for $1,300 and in 1979 a second account was opened for $1,500. At trial, Mr. Vanni stated that the present value of the accounts amounted to $16,000 and that the value of two term accounts opened in 1981 also totaled $16,000. He explained that nominal living expenses while living with his mother enabled him to contribute periodically to the accounts.

Relying on the testimony and evidence, the trial judge found that the parties separated on October 27, 1980. The defendant was faulted for precipitating the separation through his adulterous conduct. Further, the trial justice found that the wife's conduct was proper and that she had worked steadily during the marriage, contributing her entire earnings. He noted that the husband worked when he could.

In addressing the equitable assignment, the trial justice ordered that:

"the husband convey all his right, title, and interest in and to the marital domicile to the wife; that the husband shall have free from the claim of his wife, all his IRA accounts, his bank account, which altogether comes to about $35,000. The balance of the equitable assignment, while weighed somewhat in favor of the wife, is certainly not any great amount that would perhaps compensate her for the long period of marriage, and the fact that she is now [sic] walking away with a very great deal, certainly nothing in the way of liquid assets, except what she herself, has accumulated in a bank account of $6,300 and $311 in an Old Colony checking account, and $200 in a Buick, and $60 share of Old Stone Corporation, about $7,000. The Court finds that equitably appears to be the appropriate way to divide the assets of the parties."

On appeal (1) the husband challenges the trial justice's determination to include assets acquired by the husband after the marriage was irretrievably broken pursuant to the Rhode Island equitable-distribution statute, G.L. 1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L. 1982, ch. 403, § 1;[1] and (2) he contends that the trial

---

1. General Laws 1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L. 1982, ch. 403, § 1 provides in pertinent part as follows:

"Assignment of property.—In addition to or in lieu of an order to pay alimony made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be so assigned, the court after hear-

justice misconceived and overlooked material evidence in calculating the distribution of marital property. For the reasons set forth below, we disagree with the husband's first contention and agree with his second contention.

## I

The equitable-distribution process requires three steps. First, the trial justice must determine which of the parties' assets are marital property and which are non-marital property. Second, the trial justice must consider the factors enumerated in § 15–5–16.1. Third, he or she must distribute the marital property. *Quinn v. Quinn*, 512 A.2d 848, 852 (R.I. 1986).

■ The husband contends that the trial justice erred in conducting the first phase of this three-part analysis by including as marital property the money saved by Mr. Vanni subsequent to his departure from the marital home. The first issue that we are presented with requires that we determine the terminal date of a marriage for the purpose of identifying assets eligible for equitable distribution under § 15–5–16.1. The husband argues that we look to other jurisdictions in making our determination.[2] He suggests that we adopt the analysis applied by the New Jersey Supreme Court in *Painter v. Painter*, 65 N.J. 196, 218, 320 A.2d 484, 495 (1974), which holds that "for purposes of determining what property will be eligible for distribution the period of acquisition should be deemed to terminate the day the complaint is filed." We do not agree with the husband, and we shall not import this proposition of law.

We recently held, and reaffirmed, our position that parties to a divorce action remain as husband and wife until the entry of the final decree of divorce. *Centazzo v. Centazzo*, 509 A.2d 995 (R.I. 1986). Further, we held:

"The filing of a divorce petition or the moving out of the marital home by one spouse certainly will not act to change the marital relationship or have any effect on the applicability of the equitable-distribution statute. Section 15–5–16.1 specifically excludes from the marital estate only two specific types of property, that property which a spouse brings into the marriage and/or that property which a spouse may receive by way of inheritance. It is a rule of statutory construction that an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed. *Murphy v. Murphy*, 471 A.2d 619 (R.I. 1984). *See generally* 2A Sands, *Statutes and Statutory Construction* § 47.23 (4th ed. 1973)." *Centazzo*, 509 A.2d at 998.

We decline to interpret the language in § 15–5–16.1 in a manner that would result in a third exception to the statute. Thus, the acquisition of assets after the irremediable breakdown of a marriage or after a valid complaint for divorce is filed or at any time before final decree for divorce is granted will not have any effect on the applicability of the equitable-distribution statute. The trial justice properly included the various accounts, held separately by Mr. Vanni subsequent to leaving the marital domicile, in the equitable assignment of marital property.

## II

The second argument advanced by Mr. Vanni states that the trial justice misconceived and overlooked material evidence in

ing the witnesses, if any, of each party, shall consider the length of the marriage, the conduct of the parties during the marriage, and the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates, and the contribution and services of either party as a homemaker. The court may not assign property or an interest therein held in the name of one of the parties if said property was held by said party prior to the marriage, but may assign income which has been derived therefrom during the term of the marriage. The court also shall not assign property or an interest therein which has been transferred to one of the parties by inheritance before, during or after, the term of the marriage."

2. For a comprehensive reference to equitable-distribution statutes, *see generally* G. McLellan, *Equitable Distribution Law and Practice* (1985).

calculating the distribution of marital assets. Mr. Vanni contends that the trial justice made three separate miscalculations including (1) the failure to correctly calculate the liquid assets of the wife, (2) the failure to correctly calculate the original cost of the marital home, and (3) the failure to consider the $7,500 gift from Mr. Vanni's mother as a contribution to the acquisition of marital property. We agree that the trial justice erred in calculating the wife's liquid assets and the original cost of the marital home. We disagree with the husband's contention that the $7,500 gift should be considered as contribution to the acquisition of the marital property.

■ We are mindful that, on review by this court, a trial justice's findings will not be disturbed unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong. *Centazzo v. Centazzo,* 509 A.2d 995 (R.I. 1986). Our review of the record discloses that the trial justice overlooked material evidence. First, in his decision he noted that the wife's liquid assets totaled "about $7,000." A review of the forms filed by Mrs. Vanni indicate that her liquid assets totaled $13,560. Second, the trial justice stated in his decision that the original cost of the house, in 1970, was $17,000. The testimony presented clearly established the cost of the marital domicile to have been $17,500. The matter is remanded to the Family Court for reconsideration of the material evidence available in the record.

■ The last assignment of error by the husband is that the trial justice erred in failing to consider the gift of $7,500 from Mr. Vanni's mother as a contribution to the acquisition of the marital property. We do not agree with the husband.

In *Quinn v. Quinn,* 512 A.2d 848 (R.I. 1986), we relied on the doctrine of transmutation, which represents an application of the presumption-of-gift principle. This principle refers to a change in the character of property from separate to marital by an exercise of an actual intention objectively manifested. The record does not recite evidence to evince any intention that the gift from the husband's mother was to remain in his separate, nonmarital estate. We are of the opinion that the trial justice properly included the $7,500 in the equitable assignment of the marital property.

For the reasons stated, the husband's appeal is denied in part and sustained in part. Those portions of the decree regarding the wife's total liquid assets and the original cost of the marital domicile are reversed, and the case is remanded to the Family Court for reconsideration of such issues in light of this opinion. The decree is affirmed in all other aspects.